# UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF OHIO

In Re:

Stephen/Tamra O'Brien

    Debtor(s)

**JUDGE RICHARD L. SPEER**

Case No. 07-30825

## DECISION AND ORDER

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1). At the conclusion of the Hearing, the Court, after reviewing the evidence in light of the arguments presented by the Parties, found that the Motion of the United States Trustee had merit. Hence, the Court ordered the Dismissal of the Debtors' case, but stayed the effective date of this Order so as to afford the Debtors the opportunity to convert their case. Pursuant to Rules 7052(a) and 9014(c) of the Bankruptcy Rules of Procedure, the following constitutes this Court's findings of fact and conclusions of law.

## FACTS

On March 12, 2007, the Debtors filed a petition in this Court under Chapter 7 of the United States Bankruptcy Code. In their petition, the Debtors set forth a total of $158,514.63 in unsecured, nonpriority debt consisting primarily of consumer debt. The status of many of these unsecured obligations was set forth as in "collections."

For income, the Debtors set forth that they are both self-employed in the child care business, from which they together make on average $6,230.25 per month. For expenses, the Debtors set forth $6,849.00 in necessary monthly expenditures, thus leaving their household budget significantly in the negative. Included in their monthly expenditures were mortgage payments in the amount of

In re Stephen/Tamra O'Brien
Case No. 07-30825

$2,156.00, property taxes in the amount of $208.00, homeowners' insurance of $67.00, $300.00 for utilities and a $1,500.00 expense from the operation of their business. With regards to the business expense, the Debtors did not, nor have they, provided an itemization for this expenditure as requested by the United States Trustee.

In December of 2006, the Debtors purchased a home, financing the purchase through the conveyance of a first and second mortgage in the respective amounts of $212,000.00 and $53,000.00. The Debtors also purchased a new automobile in December of 2006. Consideration for the vehicle consisted of an exchange of an older vehicle owned by the Debtors and financing in the amount of $24,900.00. On both these items of collateral, the home and the car, the Debtors set forth in their bankruptcy petition an intention to reaffirm on the underlying obligations.

In their loan application for their home, the Debtors each disclosed a monthly income of $6,500.00, thus giving them a combined household income of $13,000.00 per month. (U.S.T. Ex. No. 1-2). The Debtors also set forth in their loan application they were not in delinquent or in default on any loan obligations. (U.S.T. Ex. No. 1-2).

## DISCUSSION

The United States Trustee (hereinafter "UST") filed its Motion to Dismiss under § 707(b)(1). In relevant part, this provision provides that a court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be "an abuse." This paragraph was added to the Bankruptcy Code on October 17, 2005, with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act. A primary purpose of this Act, which is otherwise known as BAPCPA, was to curb perceived abuses within the

Page 2

bankruptcy process. *In re King*, 362 B.R. 226, 321 (Bankr. D.Md. 2007). In this effort, § 707(b)(1) made a number of substantive changes to its predecessor, § 707(b).

First, § 707(b)(1) makes the standard for dismissal less stringent; prior to BAPCPA, a case could only be dismissed for "substantial abuse," as opposed to now for simply "abuse." Congress also eliminated in BAPCPA what had otherwise been a safeguard for the debtor: under the former § 707(b) there existed a presumption in favor of allowing the debtor's case to proceed. *In re Haar*, 360 B.R. 759, 760 (Bankr. N.D.Ohio 2007). Now, in the absence of such a presumption, it would appear that the overall burden is on the debtor to show that he or she is entitled to Chapter 7 relief. *See* 29 AM JUR.2D *Evidence* § 158 (2006) ("the burdens of production and persuasion generally fall upon the party seeking a change in the status quo, or upon the party that asserts the claim").

In addition to these changes, Congress also prescribed two alternative standards through which the existence of "abuse" is to be gauged for purposes of § 707(b)(1). First, in § 707(b)(2), Congress provided that, under a 'means test' formula, abuse may be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) was added to the Code by BAPCPA to provide that, even if no presumption of abuse arises, a court could still dismiss a case based upon the particular circumstances of the case. In this matter, the arguments of the UST focused solely on the § 707(b)(3) standard for dismissal.

> Section 707(b)(3) provides:
>
> (3) In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider–
>
> (A) whether the debtor filed the petition in bad faith; or

Page 3

>> (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

As a determination of dismissal under this provision directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(J)/(O); 1334.

This Court has observed, as have others, that § 707(b)(3) is best understood as a codification of pre-BAPCPA case law.[1] Under pre-BAPCPA law, a debtor's ability to pay was a primary consideration in any § 707(b) analysis. *In re Krohn*, 886 F.2d 123 (6th Cir.1989). Many factors are relevant in such an analysis, including exactly what the Debtors now seek to do in their bankruptcy case: reaffirm on a large amount of secured debt to the detriment of the unsecured creditors. *See, e.g., In re Oot*, — B.R. —, 2007 WL 1464488 (Bankr. N.D.Ohio 2007) (attempt by a debtor to reaffirm on a large amount of unsecured debt is especially problematic under BAPCPA).

The figures provided by the Debtors in this matter show that they intend to reaffirm on their home, which costs them over $2,400.00 per month. This figure constitutes approximately 40% of

---

[1] In *In re Oot*, this Court stated that for "purposes of their application, the two grounds for dismissal under § 707(b)(3) are best understood as a codification of pre-BAPCPA case law, with there existing an abundance of reported cases wherein, prior to the passage of BAPCPA, courts dismissed Chapter 7 cases based upon both a debtor's 'bad faith' and where the 'totality of circumstances' revealed that the debtor was undeserving of Chapter 7 relief." — B.R. —, 2007 WL 1464488 (Bankr. N.D.Ohio 2007).

Other courts apply pre-BAPCPA case law to § 707(b)(3) included: *In re McGillis*, — B.R. —, 2007 WL 1549071 (Bankr.W.D.Mich.2007); and *In re dePellegrini*, — B.R. —, 2007 WL 1429037 (Bankr. S.D.Ohio 2007).

Page 4

In re Stephen/Tamra O'Brien
Case No. 07-30825

the Debtors' total income, thus dispossessing them of an overt amount of their resources which could have been otherwise used for the benefit of their unsecured creditors. Moreover, the figures the Debtors provided in their petition raise serious concerns as to their good faith.

First, the income and expense figures provided by the Debtors show that, exclusive of payments on both their unsecured debt and taxes, their monthly budget is in the negative by more than $600.00 per month. It is highly unlikely that this is accurate. Put in this form of a question: How do the Debtors spend more money than they make? Resultantly, it would appear that the Debtors have not been entirely forthcoming, as bankruptcy law requires, with their financial figures. This same lack of candor is also exemplified by the Debtors failing to provide, despite requests from the UST, an accounting as to their $1,500.00 business expense. However, any question as to the Debtors' lack of good faith is made clear by their eve of bankruptcy conduct.

Section 707(b) actions have often been founded upon eve of bankruptcy purchases. *See, e.g., In re Mitchell*, 357 B.R. 142, 155 (Bankr. C.D.Cal. 2006). And it is difficult to envision a clearer picture of debtors engaging in eve of bankruptcy purchases than what is presented here. Approximately three months prior to filing bankruptcy, the Debtors purchased a home, incurring $265,000.00 in secured debt; almost contemporaneously, the Debtors also incurred another $24,900.00 in secured debt for the purchase of an automobile.

Additionally, given the proximity of these events with their bankruptcy filing, along with the existence of their relatively large amount of unsecured debt ($158,514.63), this is also clear: The Debtors engaged in bankruptcy planning, intending to exchange their large amount of unsecured debt for secured debt which could then be reaffirmed through the bankruptcy process. Such a practice simply cannot be tolerated as goes contrary to a fundament of bankruptcy: "to grant a 'fresh start' to the honest but unfortunate debtor." *Marrama v. Citizens Bank of Massachusetts*, 127 S.Ct. 1105, 1107 (2007). In the § 707(b) context, the Sixth Circuit also noted that in determining a debtor's

Page 5

**In re Stephen/Tamra O'Brien**
**Case No. 07-30825**

honesty and good faith, a court should consider a debtor's "candor in filing schedules and other documents, whether he has engaged in 'eve of bankruptcy purchases,' and whether he was forced into Chapter 7 by unforeseen or catastrophic events."*In re Krohn*, 886 at 126.

In addition to the above indicia of bad faith, the Debtors also made material misrepresentations in their loan applications. First, and foremost, the Debtors listed their monthly income at an amount approximately twice its correct amount. Given the degree of this misrepresentation, the Court simply cannot accept that it was inadvertent. In addition, the Debtors also disclosed in the loan application that they were not delinquent or in default on any loan obligations; but this would appear to be highly unlikely considering that just three months later the Debtors disclosed in their bankruptcy petition that many of their obligations were in "collection."

The Debtors sought to justify the forgoing considerations by pointing out that they bought their new home because they needed it in the operation of their daycare business. But regardless of the veracity of this statement, it does not pass muster. To begin with, it does not excuse the false statements the Debtors made in their loan obligations. It has also never been a bankruptcy policy to allow a Chapter 7 debtor to escape their liabilities for the sake of their business. Unlike other chapters of the Bankruptcy Code involving reorganization, income production of a debtor is a not a prime concern in a Chapter 7, – which not coincidentally is entitled "liquidation."

Debtors who come to the bankruptcy court for relief are expected to deal honestly with their creditors. The facts presented here, however, are the antithesis of good faith Chapter 7 debtors. As such, under both the totality of circumstances and bad faith standards set forth in § 707(b)(3), the Court finds that this case should be Dismissed. However, pursuant § 105(a) and § 707(b)(1), the immediate dismissal of this case will be stayed so as to afford the Debtors the opportunity to convert this case to one under Chapter 13 of the Bankruptcy Code.

Page 6

**In re Stephen/Tamra O'Brien**
**Case No. 07-30825**

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business on Monday, July 9, 2007, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

**IT IS FURTHER ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.

Dated: June 25, 2007

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 7

# CERTIFICATE OF SERVICE

Copies were mailed this 25th day of June, 2007 to:

Cynthia A Jeffrey
2450 Edison Blvd
Twinsburg, OH 44087

Steven Emery
323 W. Lakeside Avenue
Suite 200
Cleveland, OH 44113

GMAC
2740 Arthur Street
Roseville, MN 55113

Erik J Wineland
420 Madison Ave #1250
Toledo, OH 43604

David J Demers
P.O. Box 714
New Albany, OH 43054

Stephen D.L. O'Brien
16239 Co. Rd. F
Wauseon, OH 43567

Tamra M. O'Brien
16239 Co. Rd. F
Wauseon, OH 43567

Thomas Gene French
316 North Michigan Suite 420
Toledo, OH 43624

Dean Wyman
Howard M. Metzenbaum U.S. Court House
201 Superior Aveneue, Suite 441
Cleveland, OH 44114-1240

John N Graham
5151 Monroe St
#245
Toledo, OH 43623

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court